IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00907-RBJ

KARL W. SCHMIDT & ASSOCIATES, INC.,

    Plaintiff,

v.

ACTION ENVIORNMENTAL SOLUTIONS, LLC,

    Defendant.

---

## ORDER

---

This case is before the Court on defendant Action Environmental Solutions, LLC's Motion to Dismiss Due to Improper Venue or in the Alternative Motion to Transfer to the Southern District of New York [ECF No. 11]. For the reasons explained below, the motion is now denied.

### I. BACKGROUND

The present dispute began with a contract between plaintiff Karl W. Schmidt & Associates, Inc. ("KWS") and defendant Action Environmental Solutions, LLC ("Action"). *See* ECF No. 4 at ¶ 8. KWS, a Colorado corporation headquartered in Commerce City, Colorado, manufactures and sells conveyor belts, sorters, and other system components for use in waste management and recycling facilities. ECF No. 4 at ¶¶ 1, 6. Action is a limited liability company with its principal place of business in either Newark, New Jersey or Bronx, New York that sorts

recyclable commodities for resale and performs other waste collection functions. *See* ECF No. 4 at ¶¶ 2, 7; Affidavit of Frank A. Blandino, ECF No. 11-1, at ¶ 6. Under the contract, Action hired KWS to manufacture, deliver, and install a Commercial Single Stream System ("the System"), a complex system designed to sort recyclable materials. ECF No. 4 at ¶ 8.

According to the complaint, plaintiff delivered and installed the System but has not been fully paid. ECF No. 4 at ¶¶ 16, 18. In the contract, Action agreed to pay KWS $9,587,970 in installments, with the final payment due 30 days after the System became operational. ECF No. 4 at ¶¶ 16, 18. Action allegedly paid the first seven installments, but not the final two, despite the system's becoming operational in June of 2013. ECF No. 4 at ¶¶ 11, 12. Plaintiff alleges that the defendant now owes KWS $973,497. ECF No. 4 at ¶ 13.

Several facts about the contract's geographic ties are relevant here. Action initially contacted KWS employees at their offices in Colorado. Affidavit of Karl W. Schmidt, ECF No. 18-1, at ¶ 4. The parties executed the contract either in Bronx, New York or at defendant's former headquarters in Newark, New Jersey, although the contract itself states that "[a]ny contract with the Buyer [here, Action] shall be deemed to have been made in the state of Colorado." Affidavit of Frank A. Blandino, ECF No. 11-1, at ¶ 6; Contract, ECF No. 4 Ex. A, at 10, ¶ 16. The contract also includes a choice of law provision and forum selection clause: "[This contract] shall be governed by the laws of the State of Colorado, and any legal action connected with [this] contract may be brought in the City and County of Denver." Contract, ECF No. 4 Ex. A, at 10, ¶ 16. After the contract was executed, KWS employees designed and manufactured the System in KWS's Colorado manufacturing facility (although some of the parts delivered to Action's facility came directly from various locations in Europe). *See* Affidavit of Karl W.

Schmidt, ECF No. 18-1, at ¶¶ 4, 10, 12. The components of the system were then shipped from Colorado to Action's New York facility, where KWS employees installed them. *Id.* at ¶ 11. Later on, parts of the System were repaired and replaced at the same facility, where the system is presently located. Affidavit of Frank A. Blandino, ECF No. 11-1, at ¶ 8, 9. Finally, payments made to KWS from Action apparently originated in New York but were received by plaintiff in Colorado. *See id.* at ¶ 11; Contract, ECF No. 4 Ex. A, at 9, ¶ 2.

The plaintiff initially filed this action in Colorado state court. ECF No. 4. The defendant removed to federal court, ECF No. 1, and now seeks dismissal or transfer.

## II. DISCUSSION

Defendant seeks two alternative actions in its motion. First, defendant moves for dismissal for improper venue. Second, defendant seeks the transfer of this action to the Southern District of New York. The Court will address each in turn.

### A. Dismissal for Improper Venue.

#### 1. Standard of Review.

"Once venue is attacked, the plaintiff bears the burden to show proper venue." *Ervin & Associates, Inc. v. Cisneros*, 939 F. Supp. 793, 796 (D. Colo. 1996). However, the plaintiff need only make a prima facie showing that venue is proper. *JD Parker Constr., Inc. v. E. Equity Partners, L.L.C.*, No. CIV.A. 08-CV-01392LT, 2009 WL 151491, at *3 (D. Colo. Jan. 22, 2009). In reviewing a Rule 12(b)(3) motion to dismiss for improper venue, the Court may examine facts outside the complaint,[1] and it must draw all reasonable inferences and resolve all factual

---

[1] Doing so in these circumstances does not convert the motion into one for summary judgment. *Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.*, No. 09-CV-153-TCK-TLW, 2010 WL 582205, at *3 (N.D. Okla. Feb. 10, 2010). Additionally, in general "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen*

conflicts in favor of the plaintiff. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260–61 (10th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 324 (2004)). Specifically, the Court must accept the well-pleaded allegations of the complaint as true to the extent that they are uncontested by the defendant's affidavits. *Id.* "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *H&H Transformer, Inc. v. Battelle Energy Alliance, L.L.C.*, No. CIVA09-CV-00442WYDBNB, 2009 WL 3530370, at *3 (D. Colo. Oct. 23, 2009).

   **2. Analysis.**

Under 28 U.S.C. §1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." To determine if venue is proper where an action was filed, courts look to 28 U.S.C. §1391(b), which provides that:

> A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. §1391(b). The plaintiff argues that venue is proper in Colorado under both §1391(b)(1) and §1391(b)(2). The Court finds that venue is proper under §1391(b)(2) and thus does not reach the question of whether it is also proper pursuant to §1391(b)(1).

---

*v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). The plaintiff in this case has attached a copy of the contract, and the defendant does not dispute its authenticity. Thus the Court has considered it.

The Court here focuses on the analysis of where "a substantial part of the events or omissions giving rise to the claim occurred" under §1391(b)(2).  As an initial matter, "venue is not limited to the district with the most substantial events or omissions," but rather it can be appropriate in any district where a substantial part of the events giving rise to the claim occurred. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165–66 (10th Cir. 2010) (discussing a prior version of §1391(b)(2)).  The Tenth Circuit applies a two-part test in reviewing challenges to venue under §1391(b)(2).  *Id.* at 1166.  First, a court should "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims. . . . Second, [the court must] determine whether substantial events material to those claims occurred in the forum district." *Id.*

Beginning with the first step, plaintiff's claim centers on the contract for the System that defendant allegedly breached.  *See* ECF No. 4 at ¶¶ 8, 13.  The acts and omissions underlying the claim took place in Colorado, New York, and possibly New Jersey.  Action contacted the owner and CEO of KWS at his offices in Colorado to request that KWS manufacture the System. Affidavit of Karl W. Schmidt, ECF No. 18-1, at ¶ 4.  The parties then executed the contract either in Bronx, New York or at defendant's former headquarters in Newark, New Jersey.[2] Affidavit of Frank A. Blandino, ECF No. 11-1, at ¶ 6.  After the contract was executed, KWS

---

[2] The contract itself states that "[a]ny contract with the Buyer [here, Action] shall be deemed to have been made in the State of Colorado."  Contract, ECF No. 4 Ex. A, at 10, ¶ 16.  Although the Court must resolve all factual conflicts in favor of the plaintiff, here the plaintiff has not alleged that the contract was not in fact executed in either New York or New Jersey, nor has it presented any evidence in an affidavit to that effect.  The contract provision stating that it shall be deemed to have been made in Colorado is not sufficient to prevent the Court from considering where the contract was in fact executed according to defendant's affidavit.  Because the §1391(b)(2) analysis focuses on where the actual acts and omissions underlying the claim took place, the Court does not find this contract provision relevant to the analysis here.  Indeed, the Supreme Court has recently held that a forum selection clause plays no role in the §1391(b)(2) analysis and emphasized that "[t]he structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum."  *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 577 (2013).  Extending this reasoning, the Court here finds that the parties cannot alter the statutorily-mandated analysis in §1391(b)(2) by contract.

employees designed and manufactured the System in KWS's Colorado manufacturing facility. *See* Affidavit of Karl W. Schmidt, ECF No. 18-1, at ¶¶ 4, 10.  The components of the system were then shipped to Action's New York facility, where KWS employees installed them.[3]  *Id.* at ¶ 11.  Parts of the System were later repaired and replaced at the same facility, where the system is presently located.  Affidavit of Frank A. Blandino, ECF No. 11-1, at ¶ 8, 9.  Finally, payments made to KWS from Action apparently originated in New York but were received by plaintiff in Colorado.[4]  *See id.* at ¶ 11 Contract, ECF No. 4 Ex. A, at 9, ¶ 2.

Turning now to the second step of the §1391(b)(2) analysis, the Court must determine whether substantial events material to plaintiff's claim occurred in Colorado.  Considering the entire sequence of events discussed in the first step above, *see Employers Mut. Cas. Co.*, 618 F.3d at 1166, the Court concludes that plaintiff has made a prima facie showing sufficient to satisfy this standard.  Discussions leading up to the execution of the contract took place with the plaintiff's employees in Colorado, and much of the plaintiff's performance under the contract—designing and manufacturing the System—occurred in Colorado as well.  Finally, plaintiff received payments under the contract in Colorado.  These are substantial events material to plaintiff's breach of contract claim, and thus the court finds that venue is proper under 28 U.S.C. §1391(b)(2).  Because the plaintiff has made a prima facie showing that venue is proper in Colorado, the Court declines to dismiss its claim under Rule 12(b)(3) and 28 U.S.C. §1406(a).

### B. <u>Transfer to the Southern District of New York</u>.

---

[3] Some of the parts shipped to Action's facility in New York came from "various locations in Europe," rather than the KWS facility in Colorado.  Affidavit of Karl W. Schmidt, ECF No. 18-1, at ¶ 12.

[4] The Court notes that, despite plaintiff's arguments to the contrary, the parties' forum selection clause is not relevant to this analysis.  *See Atl. Marine Constr. Co.*, 134 S. Ct. at 577 ("Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into any of the categories of cases listed in § 1391(b).").

Defendant argues in the alternative that the Court should transfer this action to the Southern District of New York under either 28 U.S.C. §1404(a) or 28 U.S.C. §1406(a). Because the Court found in the analysis above that venue is proper in Colorado, transfer under §1406(a) is not appropriate. As explained below, the Court also declines to transfer this case under §1404(a).

### 1. Standard of Review.

"[The] party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). "[U]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Id.* Furthermore, "[m]erely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." *Id.* at 966. "When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011).

### 2. Analysis.

§1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]" The Court will assume without deciding that this action could have been brought in the Southern District of New York, as defendant argues. Having made this assumption, the Court would ordinarily go on to evaluate the convenience of the parties and various public-interest considerations in a multi-factor test to determine whether to transfer the

7

case. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). However, recent Supreme Court precedent alters this analysis when the parties have agreed to a valid forum selection clause. *See id.* Thus the Court will first address the role of the parties' forum selection clause in the §1404(a) analysis, then examine the factors relevant to whether transfer is appropriate.

    a. **The Forum Selection Clause**.

As an initial matter, the Court must determine what role the forum selection clause plays in deciding whether to transfer this case. The contract between the parties provides that "any legal action connected with [this] contract may be brought in the City and County of Denver."[5] Contract, ECF No. 4 Ex. A, at 10, ¶ 16. In light of this valid forum selection clause, the Court turns to the Supreme Court's recent decision in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013). In that case, the Court held that

> [T]he calculus [under §1404(a)] changes . . . when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum. The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most

---

[5] Plaintiff originally brought this suit in the District Court for the City and County of Denver, and defendant removed to this Court. ECF No. 1. Given the language of the forum selection clause, it is applicable whether the case is in a state or federal court in Denver. *See, e.g., Basicomputer Corp.*, 973 F.2d at 510 (holding that "courts *in* the State of Ohio" could include the federal district court) (emphasis added); *Carrano v. Harborside Healthcare Corp.*, 199 F.R.D. 459, 462 (D. Conn. 2001) (holding that the phrase "litigation . . . shall be brought in Pinellas county" could mean state or federal court in Pinellas County). Furthermore, courts generally do not distinguish between the state court in which a plaintiff originally filed an action and the federal forum to which it was removed for purposes of a §1404(a) analysis. *See, e.g., John's Insulation, Inc. v. Siska Const. Co.*, 671 F. Supp. 289, 294–97 (S.D.N.Y. 1987) (finding that a clause stating that "any action hereunder shall be commenced in the Supreme Court of the State of New York" did not preclude removal and then proceeding to treat the federal court in New York as a forum to which defendant consented).

exceptional cases.

*Id.* at 581 (internal citations and quotations omitted). Thus the Court expressed a clear policy interest in enforcing forum selection clauses in the context of motions to transfer under §1404(a).

However, despite the quoted language above, the *Atlantic Marine* decision is not directly on-point here. In that case, the forum selection clause was a mandatory one that the defendant sought to enforce.[6] *Id.* at 575–76. There are two important differences in the present case: (1) the clause is permissive (a legal action "may" be brought in Denver) and (2) the plaintiff initially filed this suit in the forum contemplated by the clause (the defendant here is the party seeking a forum different than the one contracted for).

There is no Tenth Circuit case addressing the applicability of *Atlantic Marine* in these circumstances, but a handful of district courts have analyzed its applicability in cases involving permissive clauses. Most have declined to apply the case in this context: "Although *Atlantic Marine* never addressed the 'permissive' versus 'mandatory' distinction, district courts across the country have generally limited the *Atlantic Marine* framework to situations where the forum selection clause is mandatory." *Waste Mgmt. of Louisiana, L.L.C. v. Jefferson Parish*, No. CIV.A. 13-6764, 2014 WL 4403447, at *12 (E.D. La. Sept. 5, 2014), *motion to certify appeal on this issue granted sub nom. Waste Mgmt. of Louisiana, L.L.C. v. Parish*, No. CIV.A. 13-6764, 2014 WL 5393362 (E.D. La. Oct. 22, 2014). *See also Fin. Cas. & Sur., Inc. v. Parker*, No.

---

[6] The Tenth Circuit has acknowledged the distinction between permissive and mandatory forum selection clauses. *See, e.g.*, *King v. PA Consulting Grp., Inc.*, 78 F. App'x 645, 649 (10th Cir. 2003). Indeed, it has approved of reasoning that affords permissive clauses less weight than mandatory ones: "In some courts, permissive forum-selection agreements in favor of the forum state where the case was filed carry just as much weight as mandatory forum-selection clauses. Other courts have held that a permissive forum-selection agreement is entitled to less weight in a section 1404(a) analysis. In an unpublished opinion, the Tenth Circuit expressed approval for this latter approach." *McKenna v. CDC Software, Inc.*, No. CIVA 08CV00110EWNMEH, 2008 WL 4197740, at *7 (D. Colo. Sept. 9, 2008) (citing *King*, 78 F. App'x at 649–50) (internal citations omitted).

CIV.A. H-14-0360, 2014 WL 2515136, at *3 (S.D. Tex. June 4, 2014) ("District courts across the country have . . . recognized that the analysis on a motion to transfer based on a forum-selection clause begins with whether the clause is mandatory or permissive. If the forum-selection clause is permissive, the courts have consistently declined to apply *Atlantic Marine*.").

However, all of the cases involving a permissive clause that the opinions cited above rely on deal with a defendant seeking transfer through the enforcement of a forum selection clause, not a plaintiff relying on the clause to remain in its chosen forum.[7] This difference is critical in light of the reasoning behind these decisions. As the Court in *Waste Management* explained in the context of a defendant seeking transfer based on a permissive clause,

> in *Atlantic Marine,* the Supreme Court emphasized the importance of enforcing the terms of the parties' contract. . . . Under the framework in *Atlantic Marine,* a forum selection clause has "controlling weight in all but the most exceptional cases." Giving a permissive clause controlling weight, however, would be antithetical to "holding parties to their bargain." Essentially, a permissive clause would be transformed into a mandatory clause anytime a defendant raised the doctrine of *forum non conveniens.*

No. CIV.A. 13-6764, 2014 WL 4403447, at *13 (internal citations omitted). This reasoning, however, is not applicable to a case like the present one in which the plaintiff relies on the forum selection clause in opposing a motion to transfer. Affording the clause controlling weight in this context would not have the effect of transforming it into a mandatory clause, but rather would hold the parties to their bargain by keeping the suit in a forum expressly allowed by their contract. Thus the Court does not find the analysis in cases like *Waste Management* to be persuasive in this context.

---

[7] *See Waste Mgmt. of Louisiana, L.L.C.*, No. CIV.A. 13-6764, 2014 WL 4403447 (defendant sought transfer based on permissive forum selection clause); *RELCO Locomotives, Inc. v. AllRail, Inc.*, No. 4:13-CV-00394, 2014 WL 1047153 (S.D. Iowa Mar. 5, 2014) (same); *U.S. ex rel. MDI Servs., LLC v. Fed. Ins. Co.*, No. 5:13-CV-2355-AKK, 2014 WL 1576975 (N.D. Ala. Apr. 17, 2014) (same). *See also Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. CIV.A. 13-4770 SDW, 2014 WL 4724625 (D.N.J. Sept. 23, 2014) (same).

Indeed, it seems appropriate to apply some of the reasoning in *Atlantic Marine* in the present case. Beyond the general language emphasizing the importance of holding the parties to their bargain, the *Atlantic Marine* Court laid out three specific ways in which a forum selection clause affects the §1404(a) analysis: (1) when the plaintiff defies the forum selection clause, the plaintiff's choice of forum is not entitled to any weight; (2) a court should not consider arguments about the parties' private interests, but instead should only weigh public-interest factors; and (3) "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum," a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules. *Atl. Marine Constr. Co.*, 134 S. Ct. at 581–82. The first and third guidelines clearly cannot apply when the plaintiff files in the forum contemplated by the clause; however, determining the relevance of the second requires a more detailed analysis.

The Supreme Court held that courts should not consider the parties' private interests when a mandatory forum selection clause exists because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582. Furthermore, "whatever inconvenience the parties would suffer by being forced to litigate in the contractual forum as they agreed to do was clearly foreseeable at the time of contracting." *Id.* This reasoning applies equally in the present context, where the parties agreed that any court in Denver was an acceptable forum. Any inconvenience that Action will experience litigating in Colorado was clearly foreseeable at the time of contracting, and the Court will hold the parties to

11

their bargain in this regard.[8]

The Court thus adopts the *Atlantic Marine* approach in disregarding any arguments about the parties' private interests.[9] Instead, the Court will "consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

### b. Multi-Factor Transfer Analysis.

The Court now turns to the multi-factor test employed by courts to evaluate the convenience of the parties and public-interest considerations. *See Atl. Marine Constr. Co.*, 134 S. Ct. at 581. In light of the above analysis, the Court deems all of the private-interest factors to weigh in favor of Colorado, the parties' pre-selected forum, and examines only the public-interest factors and the plaintiff's choice of forum in determining whether transfer is appropriate. As the Supreme Court explained in *Atlantic Marine*,

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court

---

[8] Defendant argues that *Atlantic Marine* is applicable only when "[t]here are facts to support a claim that the parties entered into negotiations over [the forum selection clause]" and those negotiations affected the contract price. ECF No. 24 at 13. Defendant misreads the case. The Court in *Atlantic Marine* stated only that "[a] forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place." 134 S. Ct. at 583. This statement merely emphasizes the weight the Court affords a contracted-for forum selection clause. There is clearly no requirement that a party present specific evidence that the parties negotiated over a particular term before a court will enforce part of a valid contract; any suggestion to the contrary is misguided.

[9] The Eastern District of Michigan reached the same conclusion in what appears to be the only post-*Atlantic Marine* case involving a plaintiff relying on a permissive clause to oppose transfer: "After *Atlantic Marine,* when a valid and enforceable forum selection clause exists between the parties and one party moves to transfer venue pursuant to section 1404(a), the court should not weigh private factors such as convenience of the parties and their friendly witnesses; those considerations automatically weigh in favor of the preselected forum." *United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 749–50 (E.D. Mich. 2014).

> congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. The Court must also give some weight to the plaintiffs' choice of forum.

134 S. Ct. at 581 n.6 (internal citations and quotations omitted). Thus the factors that the Court will undertake an analysis of here are: (1) administrative difficulties related to court congestion, (2) the interest in deciding localized controversies at home, (3) the interest in trying a diversity case in a forum that is at home with the law, and (4) the plaintiff's choice of forum.

The first two—administrative difficulties and the interest in deciding localized controversies at home—do not dictate strongly in favor of either forum. Neither side has argued that court congestion should be a factor weighing in one side's favor, and the Court sees no basis for assigning it any weight in this analysis. Similarly, whether this case involves a controversy local to Colorado is debatable. The dispute has geographic ties to both Colorado and New York, and thus the Court does not find that this second factor weighs in favor of either forum.

The latter two factors, however, both undoubtedly weigh in the plaintiff's favor. The contract in this case contains a choice of law provision stating that it "shall be governed by the laws of the State of Colorado." Contract, ECF No. 4 Ex. A, at 10, ¶ 16. Thus the interest in trying a diversity case in a forum that is at home with the law weighs in favor of keeping the case in this Court. Additionally, the plaintiff chose this forum, and therefore the final factor also supports the decision to keep the case in Colorado.

In sum, the Court deems all of the private factors to weigh in favor of Colorado and finds that the remaining factors either also weigh in Colorado's favor or should not be assigned any weight in this particular case. The Court therefore finds that the defendant has not met its burden

of demonstrating that transfer is appropriate in this case and denies defendant's motion to transfer under §1404(a).

### III.  ORDER

Defendant's Motion to Dismiss Due to Improper Venue or in the Alternative Motion to Transfer to the Southern District of New York [ECF No. 11] is DENIED.

DATED this 21st day of November, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge